**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**UNITED STATES OF AMERICA,**

**v.**                                                             **Criminal Action No.   3:11cr147**

**JAMES ARTHUR KENNARD,**

                    **Defendant.**

**MEMORANDUM OPINION**

This matter comes before the Court on Defendant James Arthur Kennard's Motions for

Compassionate Release pursuant to Section 603(b) of the First Step Act (the "Motions").  (ECF

Nos. 28, 35.)  The United States responded in opposition (the "Opposition").  (ECF No. 40.)

Kennard did not file a reply and the time to do so has expired.  These matters are ripe for

disposition.  The Court dispenses with oral argument because the materials before it adequately

present the facts and legal contentions, and argument would not aid the decisional process.  For

the reasons that follow, the Court will deny the Motions for Compassionate Release.

**I.  Background**

On May 23, 2011, the United States named Kennard as a defendant in a one-count

Criminal Information for possessing with the intent to distribute a mixture and substance

containing a detectable amount of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(C).

(ECF No. 9.)  On June 6, 2011, Kennard entered a guilty plea to the Criminal Information.  (Plea

Agr. ¶ 1, ECF No. 13.)  The Statement of Facts to which Kennard agreed further explains that on

November 3, 2010, law enforcement officials stopped Kennard for a traffic violation. (Statement

of Facts 1–2, ECF No. 14.)  During this traffic stop, law enforcement learned that Kennard had

an outstanding warrant for possession of cocaine.  (*Id*.)  During a search incident to his arrest,

officers recovered approximately 40 grams of cocaine base, commonly known as "crack," from Kennard's left coat pocket and $1885 from his right front pants pocket.  (*Id*.)  Kennard then gave the law enforcement officials permission to search his apartment, where they found Pyrex containers, a strainer, and two scales—all items commonly used for converting cocaine hydrochloride to cocaine base.  (*Id*. 2.)  Kennard admitted that he cooked and sold cocaine to pay his bills and that he had sold approximately two ounces of cocaine base per month in the last year, for a total amount of 672 grams of cocaine base.  (*Id*.)

Prior to sentencing, a Probation Officer determined that Kennard faced a total offense level of 29 after applying a three-level adjustment for acceptance of responsibility.  (Presentence Investigation Report ("PSR") ¶ 60, ECF No. 22.)  The Probation Officer also determined that Kennard's criminal history designated him a career offender based on his prior drug convictions.[1]  (*Id*. ¶ 31.)  Based on his career offender status, which placed him in Criminal History Category VI, Kennard faced a Sentencing Guidelines range of 151 to 188 months' imprisonment.  (*Id*. 17.)  Absent his career offender status, Kennard would have been placed in Criminal History Category IV.  (*Id*. 23–24.)  The Court sentenced Kennard to 156 months of imprisonment and three years of supervised release.  (J. 2–3, ECF No. 26.)  Kennard did not appeal or otherwise seek post-conviction relief.

Kennard is currently housed at Butner FMC.  The Bureau of Prisons ("BOP") states that Kennard will be considered for placement in a residential reentry center in 2021, and that he will be released on May 3, 2022.  *See* Bureau of Prisons, *Fed. Inmate Locator*, https://www.bop.gov/inmateloc/.  As of April 23, 2021, the BOP reports that 163 inmates at

---

[1] The PSR states that Kennard qualified as a career offender based on two prior Virginia convictions for possession with intent to distribute cocaine and one prior Virginia conviction for felony possession of cocaine.  (PSR ¶¶ 23–25, 31.)

2

Butner FMC have tested positive for COVID-19.  *See* Bureau of Prisons, *COVID-19 Coronavirus*, https://www.bop.gov/coronavirus/.  The BOP further reports that 1,802 inmates have now been fully vaccinated at FCI Butner, along with 860 members of its staff.  *Id.*

On July 28, 2020, Kennard submitted a request for compassionate release to the Warden of Butner FMC.  (Mot., ECF No. 35-1.)  On August 19, 2020, the Warden denied that request.  (*Id*. 2.)  On September 8, 2020, Kennard filed a *pro se* Motion for Compassionate Release.  (*Pro Se* Mot., ECF No. 28.)  Thereafter, the Federal Public Defender filed a motion on his behalf.  (ECF No. 35.)

In the Motions, Kennard describes the current public health crisis caused by COVID-19.  Kennard, currently fifty-four-years old, asserts that he suffers from "a history of hypertension," obesity, high cholesterol, "and an elevated Hemoglobin A1C, which increases his risk for Type II diabetes."  (Mot. 1, ECF No. 35.)  Kennard avers that during his incarceration, he has made substantial rehabilitative efforts, which include completing substance abuse courses and working successfully in food service.  (*Id*. 24.)  Kennard submitted three letters in support of his work in food services and a BOP assessment showing that he received a "low" recidivism risk score.  (ECF Nos. 35-2, 35-4, 35-5, 35-6.)  Kennard proposes living with his mother in Richmond, Virginia upon release, in a house that allows for greater social distancing.  (*Id*. 25.)

The United States opposes Kennard's request for compassionate release, arguing that no extraordinary or compelling reasons exist to support his request because the record does not adequately support his claims of obesity and hypertension.  (Opp'n 9, ECF No. 40.)  The United States "points to [Kennard's] medical records to show . . . that his obesity and hypertension pose marginal, if any, health risk to [Kennard]."  (*Id*.)  For instance, in July 2020, Kennard "told medical personnel he had not had his blood pressure medicine for three months, but his blood

3

pressure was noted as 'excellent' that day and had been 'borderline lately.'" (*Id.* 10.)  The United States further observes that Kennard "does not make any argument regarding" his high cholesterol and his elevated Hemoglobin.  (*Id.* 9 n.6.)  The United States also argues that the Court should not grant Kennard compassionate release because he has not put forth a viable release plan, as he has not "elaborate[ed on] how he plans to support himself."  (*Id.* 11–12.)

Finally, the United States contends that the Court should exercise its discretion to deny release because "[t]he nature and circumstances of Kennard's offense, along with his history and characteristics, counsel against early release."  (*Id.* 13.)  The United States highlights that Kennard "was charged with, and admitted to, the possession with intent to distribute a substantial quantity of crack cocaine.  That conviction is consistent with at least three prior cocaine-related convictions stretching back more than 20 years."  (*Id.*)  "That trajectory shows not just a consistent pattern of conduct, but also that [Kennard] was not a one-time offender or someone whose conduct might be isolated as youthful indiscretion."  (*Id.*)

## II.  Legal Standard:  Compassionate Release Under the First Step Act of 2018

In 2018, Congress enacted the First Step Act to provide incarcerated individuals the opportunity to directly petition the courts for compassionate release under 18 U.S.C. § 3582(c)(1)(A).[2]  Prior to the First Step Act in 2018, the BOP had the sole authority to petition

---

[2] Section 3582(c)(1)(A) states:

The court may not modify a term of imprisonment once it has been imposed except that—(1) in any case—(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term

the court for sentence modifications on compassionate release grounds. *Coleman v. United States*, No. 4:17cr69, 2020 WL 3039123, at *1 (E.D. Va. June 4, 2020). Following enactment of the First Step Act, criminal defendants may petition courts on their own initiative to modify their sentences if "extraordinary and compelling reasons warrant such a reduction." *Id.* (quoting 18 U.S.C. § 3582(c)(1)(A)(i)). Before granting a reduction, courts must consider the factors set forth in 18 U.S.C. § 3553(a), *see* 18 U.S.C. § 3582(c)(1)(A), and evidence of rehabilitation and other post-conviction conduct. *See United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *see also United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B)). However, a petitioner's rehabilitation alone does not provide sufficient grounds to warrant a sentence modification. 28 U.S.C. § 994(t).

### A.      Exhaustion of Administrative Remedies

Although the Court generally cannot "modify a term of imprisonment once it has been imposed," the defendant may bring a motion to modify his or her sentence "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A); *see*

---

of imprisonment), after considering the factors set forth in section 3553(a) to the extent they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

*also United States v. McCoy*, 981 F.3d 271, 283 (4th Cir. 2020) ("Congress, aware of the BOP's history of extensive delays, also provided a '30-day lapse' alternative, under which a defendant may proceed directly to district court if his [or her] request is not acted on within that time.").

"Accordingly, a petitioner seeking compassionate release is generally required to exhaust his or her administrative remedies prior to bringing a motion before the district court." *Casey v. United States*, No. 4:18cr4, 2020 WL 2297184, at *1 (E.D. Va. May 6, 2020).

The court may waive the exhaustion requirement, however, in certain circumstances. *United States v. Jones*, No. 3:11cr249, ECF No. 47, at *2–3 (E.D. Va. Apr. 3, 2020) (Lauck, J.). Courts may waive exhaustion if: "pursuing an administrative remedy would be futile[,]" "'exhaustion via the agency review process would result in inadequate relief[,]' or 'pursuit of agency review would subject the petitioner to undue prejudice.'" *United States v. Robinson*, No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020) (Lauck, J.) (quoting *Poulios v. United States*, No. 2:09cr109, 2020 WL 1922775, at *1 (E.D. Va. Apr. 21, 2020) (Jackson, J.)).

Throughout the country, courts have found the coronavirus pandemic, combined with a vulnerable defendant with underlying health conditions, implicates all three exceptions justifying a waiver of the exhaustion requirement. *See United States v. Zukerman*, 451 F. Supp. 3d 329, 332–33 (S.D.N.Y. 2020) (holding that defendant's elderly age and serious health conditions warrant a waiver of exhaustion requirements because of the ongoing risk of infection while incarcerated); *United States v. Perez*, 451 F. Supp. 3d 288, 293 (S.D.N.Y. 2020) (waiving the exhaustion requirement because exhaustion would be futile as defendant would not see thirty days lapse before his release date).

## B.     Courts Must Find Extraordinary and Compelling Reasons Justifying Compassionate Release

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to modify terms of imprisonment after considering the factors set forth in 18 U.S.C. § 3553(a) if "extraordinary and compelling reasons warrant such a reduction."  18 U.S.C. § 3582(c)(1)(A)(i). The United States Sentencing Commission further defines "extraordinary and compelling reasons."  U.S.S.G. § 1B1.13, n.1; *see United States v. Kalivretenos*, No. 1:15cr00073, ECF No. 109, at *4 (E.D. Va. May 21, 2020).  The Sentencing Commission identifies four instructive categories of extraordinary and compelling reasons that allow for a sentence to be modified:  the petitioner's medical condition, age, family circumstances, and other reasons.  U.S.S.G. § 1B1.13, n.1 (A)–(D).[3]

The United States Court of Appeals for the Fourth Circuit has explained, however, that "[w]hen a defendant exercises his [or her] new right to move for compassionate release on his [or her] own behalf . . . § 1B1.13 does not apply, and . . . § 3582(c)(1)(A)'s consistency requirement

---

[3] The United States Sentencing Guideline § 1B1.13 provides that:

Upon *motion of the Director of the Bureau of Prisons* under 18 U.S.C. § 3582(c)(1)(A), the court may reduce a term of imprisonment (and may impose a term of supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment) if, after considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that they are applicable, the court determines that—
> (1) (A) extraordinary and compelling reasons warrant the reduction; or
> (B) the defendant (i) is at least 70 years old; and (ii) has served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C. § 3559(c) for the offense or offenses for which the defendant is imprisoned;
> (2) the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13 (emphasis added).

does not constrain the discretion of district courts." *McCoy*, 981 F.3d at 281. "As of now, there is no Sentencing Commission policy statement 'applicable' to the defendants' compassionate-release motions, which means that district courts need not conform, under § 3582(c)(1)(A)'s consistency requirement, to § 1B1.13 in determining whether there exist 'extraordinary and compelling reasons' for a sentence reduction." *Id.* at 283; *see also United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021) (concluding that § 1B1.13 does not apply to compassionate release motions that inmates (or counsel acting on behalf of inmates) file directly with the district court). Furthermore, the Guidelines, while helpful, are merely advisory and do not bind the Court.

As a result of the coronavirus outbreak, "courts have found extraordinary and compelling reasons for compassionate release when an inmate shows both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. Feiling*, No. 3:19cr112, 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020) (citations omitted).

### C. Courts Must Weigh the Statutory Sentencing Factors Before Granting Compassionate Release

Even after finding a sufficient "extraordinary and compelling reason" for compassionate release, the Court must then consider the § 3553(a) factors and any relevant post-conviction conduct before modifying a defendant's sentence. 18 U.S.C. § 3582(c)(1)(A). The Court must weigh factors including "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The Court also must consider "the need for the sentence imposed to promote respect for the law . . . ; to afford adequate deterrence to criminal conduct; . . . [and] to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2). The statutory sentencing factors direct the Court to consider the kinds of sentences available and the sentencing range established for the offense. 18 U.S.C. § 3553(a)(4).

### III.  Analysis

After due consideration, the Court will deny the Motion because Kennard does not present extraordinary and compelling circumstances sufficient to necessitate compassionate release.

The Court first determines that Kennard has sufficiently exhausted his administrative remedies.  Next, the Court finds that the record does not show Kennard's health conditions constitute extraordinary and compelling circumstances that render him eligible for compassionate release consideration.  Courts have found extraordinary and compelling reasons for compassionate release "when an inmate shows both a particularized susceptibility to the disease *and* a particularized risk of contracting the disease at his prison facility."  *Feiling*, 2020 WL 1821457, at *7 (emphasis added).  Here, Kennard asserts that he faces a particular vulnerability to COVID-19 because of the conditions at FMC Butner together with his obesity and hypertension, which create an extraordinary and compelling reason to grant compassionate release.  While Kennard contends that the conditions of his confinement and health concerns create a particularized risk of contracting the disease, he does not provide medical records to show that he suffers a particularized susceptibility to the disease.  (ECF No. 38.)  The medical records that he does provide show a stable patient with borderline obesity[4] and blood pressure readings of 124/69 and 135/85 taken over the past six months, even absent medication.  (ECF No. 38 at 4, 9.)  Kennard, a seemingly healthy middle-aged person, presents no other ailments apart from the information contained in these records.  His claims of moderate hypertension and obesity, without more, do not persuade this Court to grant compassionate release.

---

[4] Kennard's medical records show that as of July 2020, Kennard weighed 197 pounds. (ECF No. 38 at 4.)  This gives him a body mass index of 30.85.  (Mot. 11.)  Kennard's weight places him slightly over the CDC's mark of 30 BMI for obesity.  (*Id.*)

Even if Kennard's medical conditions entitled him to compassionate release consideration, the Court finds that the relevant statutory sentencing factors do not support immediate release.  Upon review, Kennard's criminal history and underlying conviction demonstrate that he presents a serious threat to the public because he qualified as a career offender prior to the underlying 2011 offense based on prior convictions for possession of cocaine and possession of cocaine with intent to distribute.  Although Kennard's record lacks violent offenses, his decision to commit repeated drug crimes from 1995 until 2011 show that he presents a threat to public safety.

Turning to the § 3553(a) factors, the Court acknowledges that Kennard has served most of his sentence and will be considered for placement in a residential reentry center in roughly six months.  Additionally, upon release Kennard will begin to serve a three-year supervised release term for his offense.  The Court finds that this sentence adequately deters criminal conduct, but the seriousness of Kennard's offense and the need to protect the public outweigh immediate release.

Kennard further contends that the Court should grant his Motion because he has made demonstrable efforts while in prison to improve himself and has had good conduct for several years.  In *United States v. Martin*, the Fourth Circuit vacated and remanded the district court's denial of both defendants' motions to reduce sentence because the district court failed to address any new mitigating evidence when denying the motions.  916 F.3d at 397–98.  The Fourth Circuit explained that if an individual is eligible for a sentence reduction, the district court must give weight to the person's "past transgressions" as well as "the multitude of redemptive measures that [the person] has taken."  *Id.* at 397.

Here, Kennard has shown significant progress and rehabilitation through his current prison term.  As the United States acknowledges, Kennard committed only one disciplinary infraction over the past nine years, an accomplishment that this Court rarely sees.  (Opp'n 2.) His disciplinary record and rehabilitative efforts while in prison are commendable.  Nonetheless, in light of the seriousness of Kennard's crimes, his criminal history, and the lack of documented health concerns, the Court concludes that the record before it cannot justify Kennard's early release from federal imprisonment.

### IV.  Conclusion

For the reasons explained above, the Court will deny the Motions.  (ECF No. 28, 35.)

An appropriate Order shall issue.

/s/

M. Hannah Lauck
United States District Judge

Date:  April 29, 2021
Richmond, Virginia

11